IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VANIA DE ARMAS RAMOS,

    Petitioner,

v.                                                                                                               No. 2:26-cv-00455-KG-KRS

KRISTI NOEM, et al.,

    Respondents.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Vania De Armas Ramos' Petition for a Writ of Habeas Corpus, Doc. 1, and the Government's Response, Doc. 8. For the reasons below, the Court grants the petition.

### *I.  Background*

Ms. Armas Ramos, a citizen of Cuba, entered the United States in 2023 on parole. Doc. 1 at 4. In 2024, an Immigration Judge ("IJ") "granted a motion to dismiss Petitioner's removal proceedings without prejudice," recognizing that "Petitioner had been paroled by DHS, is a Cuban national, and would become prima facie eligible for adjustment of status under the Cuban Adjustment Act." *Id.* at 4–5. After residing in the United States for more than one year as a paroled Cuban national, Ms. Armas Ramos applied for lawful permanent residence under the Cuban Adjustment Act ("CAA"). *Id.* at 5. That application remains pending. *Id.*

Ms. Armas Ramos "has been steadily employed at Chick-fil-A in Odessa, Texas since May 8, 2024, where she serves as a kitchen leader." *Id.* Aside from the incident described below, she has no criminal history. *Id.*

1

On August 5, 2025, "following a minor traffic accident involving property damage," Immigration and Customs Enforcement ("ICE") agents took Ms. Armas Ramos into custody. *Id.* She remains detained at the Otero County Processing Center in Chaparral, New Mexico. *Id.*

On January 16, 2025, pursuant to a motion by DHS, an IJ pretermitted Ms. Armas Ramos' application for asylum and related protection and ordered her removed to Ecuador. *Id.* at 6. The removal order "was entered without a full evidentiary hearing on Petitioner's asylum claims and without a meaningful opportunity to litigate the pretermission motion." *Id.* Ms. Armas Ramos timely filed a Notice of Appeal to the Board of Immigration Appeals ("BIA"). *Id.* Ms. Armas Ramos argues her detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause. *See id.* at 11–13.

## II.     Standard of Review

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). Habeas corpus review is available if a noncitizen is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas*, 533 U.S. at 687.

## III.    Analysis

For the reasons below, the Court concludes that (A) 8 U.S.C. § 1226 governs Ms. Armas Ramos' detention, (B) Ms. Armas Ramos' detention violates her right to due process, and (C) the proper remedy is a bond hearing where the Government bears the burden of proof.

### A.     *Section 1226 governs Ms. Armas Ramos' detention.*

The INA establishes distinct detention regimes depending on whether a noncitizen is "seeking admission" to the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). Section 1225(b)(2)(A) applies to "applicant[s] for admission" who are "seeking

admission" and "not clearly and beyond a doubt entitled to be admitted." The "provision mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.) (Gonzales, J.). By contrast, § 1226(a) authorizes the arrest and detention, "on a warrant issued by the Attorney General," of noncitizens "pending a decision on whether [they are] to be removed." Noncitizens "detained under this second detention regime are entitled to individualized bond hearings at the outset of detention." *Id.*

Consistent with the overwhelming majority of district courts to consider the issue and this Court's prior findings, the Court concludes that § 1226 governs here. *See Barco Mercado v. Francis*, 2025 WL 3295903, at *13 (S.D.N.Y.) (collecting 362 district-court opinions nationwide and noting that challengers prevailed in at least 350 of them, in decisions by over 160 judges across fifty courts); *Pu Sacvin*, 2025 WL 3187432 (Gonzales, J.); *Danierov v. Noem*, 2026 WL 45288, at *2 (D.N.M.) (Gonzales, J.). Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "who has not been admitted *or* who arrives in the United States." In contrast, § 1225(b)(2)(A)'s detention mandate applies only to noncitizens "*seeking* admission" (emphasis added). Noncitizens "seeking admission" are those who have not "effected an entry" into the United States. *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Noncitizens "who entered the country years earlier" are not "seeking admission," and therefore fall under § 1226 rather than § 1225(b)(2)(A). *Pu Sacvin*, 2025 WL 3187432, at *3. The Court acknowledges the recent Fifth Circuit decision holding that "[w]hile [noncitizens] remain applicants" for admission, "they are...seeking admission." *Buenrostro-Mendez v. Bondi*, --- F.4th ----, 2026 WL 323330, at *5 (5th Cir.). The Tenth Circuit has not yet addressed this question.

Under this framework, § 1226 governs Ms. Armas Ramos' detention. ICE arrested her over three years after her initial entry into the United States and did not apprehend her at the

border.  Doc. 1 at 4–5.  Accordingly, § 1225's mandatory detention provision does not apply because Ms. Armas Ramos effected an entry into the United States by living here for years.  As the Government concedes, the facts of this case are "substantially similar" to those in *Patel*, 2026 WL 103163, where this Court granted relief.  Doc. 8 at 4.

        B.      *Ms. Armas Ramos' detention violates her right to due process.*

Courts analyze due process claims in two steps: first, whether there exists "a protected liberty interest under the Due Process Clause," and second, whether the procedures used to deprive that interest "accord with the Constitution."  *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.).  Here, Ms. Armas Ramos has a protected liberty interest.  By living in the United States, noncitizens acquire "a protectable liberty interest in remaining out of custody." *Danierov*, 2026 WL 45288, at *2.  Ms. Armas Ramos' freedom allowed her "to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Ms. Armas Ramos was also entitled to procedural safeguards before she was detained.  In determining what process is due, courts consider (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  To start, Ms. Armas Ramos' private interest in remaining free from detention is substantial.  "Freedom from imprisonment...lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  There is also a significant risk of erroneous deprivation.  Courts require "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before revoking a noncitizen's freedom.

*Danierov*, 2026 WL 45288, at *2.  Ms. Armas Ramos was detained after three years in the United States.  Doc. 1 at 13–14.  No assessment was made as to whether any material facts had changed, creating a substantial risk of erroneous deprivation of her liberty interest.  Finally, the Government's interest in detaining Ms. Armas Ramos without a hearing is limited, and the administrative burden of providing a bond hearing is minimal.  *See Danierov*, 2026 WL 45288, at *2 (the "cost of providing a bond determination is not terribly burdensome").

      **C.**     ***The remedy is a bond hearing where the Government bears the burden of proof.***

The proper habeas remedy is a prompt bond hearing at which the Government must prove, by clear and convincing evidence, that Ms. Armas Ramos is a flight risk or danger to the community.  Although "under normal circumstances, the burden" at a § 1226 hearing "is on the noncitizen" to show that detention is unwarranted, Ms. Armas Ramos' "unlawful detention in violation of [her] constitutional rights shifts that burden to the Government."  *Pu Sacvin*, 2025 WL 3187432, at *3.  A noncitizen's "strong private interest in being free from civil detention" outweighs the Government's "comparatively minimal burden to justify custody."  *Id.*

**IV.**    **Conclusion**

The Court therefore grants Ms. Armas Ramos' petition, Doc. 1.  Because relief is warranted under the INA and the Fifth Amendment, the Court will not address Count Three of her petition (alleging arbitrary interference with the statutory adjustment process).  The Court directs the Government to provide Ms. Armas Ramos with a bond hearing under § 1226(a) before an immigration judge within seven days of this Order.  At that hearing, the Government must justify Ms. Armas Ramos' detention by clear and convincing evidence.  If the Government fails to do so, it must release her.  The Court also orders the Government to file a status report

within ten days of this Order confirming that it has provided Ms. Armas Ramos with a bond hearing or released her.

IT IS SO ORDERED

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.